206 So.2d 492

**STATE of Louisiana**

v.

**Shirley CALDWELL.**

No. 48773.

Jan. 15, 1968.

Rehearing Denied Feb. 19, 1968.

Warren Hunt, Rayville, Haynes L. Harkey, Jr., Monroe, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Albin P. Lassiter, Dist. Atty., Gilbert T. Brown, Jr., Asst. Dist. Atty., for appellee.

McCALEB, Justice.

Appellant was indicted for the murder of her husband, Billy Caldwell, whom she shot fatally with a pistol at the residence of his mother, Mrs. Vera Caldwell, in West Monroe, Louisiana. After hearing the evidence, the jury brought in a verdict of manslaughter and appellant was sentenced to serve twelve years in the State Penitentiary, from which conviction and sentence she prosecuted this appeal. During the trial, appellant reserved seven bills of exceptions on which she relies for reversal. Some of these bills involve the same complaint and have been grouped in this Court by appellant's counsel into the four following specifications of error.

(1) Bills Nos. 1 and 2, which relate to the judge's refusal to permit defense counsel to propound certain questions to prospective jurors on their voir-dire examination relative to their attitude as to a plea of self defense, counsel contending that they were unduly curtailed in their efforts to secure information to have enabled them to determine whether there existed proper grounds for a challenge for cause or to intelligently decide whether to exercise a peremptory challenge.

(2) Bill No. 3, which was taken to the admission in evidence of a spontaneous inculpatory statement of appellant made to police officers at the scene of the crime when her constitutional right to remain silent had not been explained by the officers.

(3) Bills Nos. 4 and 5, which deal with the refusal of the judge to allow defense counsel to impeach the testimony of the principal state witness by introducing evidence of contradictory statements made by her.

(4) Bills Nos. 6 and 7, which were reserved to the alleged error of the judge in permitting the State, during rebuttal, to present evidence of particular derogatory acts on the part of appellant to rebut evidence of her general reputation in the community for peace and quiet and also to show criminal intent.

We have carefully considered the foregoing complaints and find that specification (3) is patently well founded as we shall hereinafter demonstrate. It is also believed that specifications (1) [1] and (4) [2] present serious questions of law but, since a new trial must be granted, it is not essen-

---

1. Bills Nos. 1 and 2 were reserved when the trial judge refused to allow defense counsel to ask two prospective jurors whether (in one instance) the juror felt a person has a right to defend himself if such person has reason to believe from the circumstances that his life is in dan- .

ger or that great bodily harm will be inflicted on him, and whether (in the other instance) the juror understood in a general way the plea of self defense. If, as defense counsel claim, the questions were propounded for the purpose of ascertaining the attitudes of the prospective jurors

tial to finally rule on these. We prefer to rest our decision on specification (3).

When the decedent's mother, Mrs. Vera Caldwell, was testifying for the State, she was asked on cross-examination whether she was visited by Mr. and Mrs. Bob Coleman at her sister's home in Monroe shortly after she left Glenwood Hospital, where she had undergone treatment for gunshot wounds. Mrs. Caldwell stated that such a visit had taken place and, when questioned whether she had discussed the case with the Colemans at this time, she declared that she had, though "not too much". Defense counsel then propounded other questions to her and elicited the following answers:

"Q. In Monroe, I am going to ask you whether or not at that time you stated to these people the following words or words of the same effect, that you ran in Billy's room and Billy and Shirley were tussling with each other?

"A. No.

"Q. You deny that?

"A. I'm saying it was not true.

"Q. I'm not asking you whether that was true, I am asking you if you told this to Mr. and Mrs. Coleman?

"A. No, I didn't tell them that.

"Q. You didn't?

"A. No."

Subsequently, appellant tendered the testimony of Mr. and Mrs. Coleman to contradict the evidence given by Mrs. Caldwell to the effect that she made no statement to them, that appellant and the deceased were tussling when she ran in Billy's room.

---

concerning self defense as such, then the ruling was erroneous and prejudicial because, albeit the scope of the examination is within the discretion of the court, it should not be curtailed to the extent of denying an accused the opportunity of ascertaining whether grounds exist for challenge for cause or depriving his counsel of information to intelligently exercise peremptory challenges. State v. Henry, 196 La. 217, 198 So. 910; State v. Brazile, 229 La. 600, 86 So.2d 208; and State v. Hills, 241 La. 345, 129 So.2d 12.

2. After appellant had introduced proof of good character, the State was permitted, on rebuttal, to show that she had committed an act of wrongdoing (driving her car recklessly with intent to injure herself and her husband) and that she had stated to her husband's best friend, more than a year before his death, that she had a pistol in her purse and would show him (her husband) "a thing or two". This evidence was first offered to rebut appellant's evidence of good character and, for this purpose, it was clearly inadmissible. State v. Emory, 151 La. 152, 91 So. 659 and authorities there cited, and see also State v. Oliver, 247 La. 729, 174 So.2d 509. However, later on the State contended that the evidence was admissible to show intent and the judge so ruled. This ruling would be correct if appellant had offered evidence to show that she did not intend to shoot her husband. But we understand that she pleaded self defense. Under such a plea, the evidence may not be received *in rebuttal* to show intent, in the absence of defense evidence indicating a lack of intent. State v. Poe, 214 La. 606, 38 So.2d 359 and cases there cited.

The State objected to the testimony sought to be elicited on the grounds that it was immaterial and irrelevant and that the proper foundation had not been laid for admission of impeaching evidence. These objections were sustained and defense counsel reserved Bills 4 and 5.

In his per curiam, the trial judge states that he sustained the objections to the testimony of the Colemans because appellant had not clearly established the time these statements were made and, further, that during the examination of the impeaching witness, Mr. Coleman, it was shown that Mrs. Caldwell, the Colemans, and another party, one Joe Renwick, were present when the statement was made. For these reasons, it was deduced that a proper foundation had not been laid.

 We think this ruling plainly erroneous. Defense counsel had established through their questioning of Mrs. Caldwell that the Colemans had visited her at her sister's home in Monroe shortly after she left the hospital and that, on the occasion of this visit, she discussed the case with them. It was not essential in laying the foundation for counsel to have been more specific for there was but one visit at a place certain, during which Mrs. Caldwell discussed the case with the Colemans. Nor do we think it was necessary for counsel to show in laying the foundation that a third party, Joe Renwick, was also present since there was apparently only one visit. The

fact of this visit, the time, place and circumstances of the visit were made clear to Mrs. Caldwell and she swore positively that she did not make any statement concerning a tussle between the decedent and appellant just prior to or at the time of the shooting.

R.S. 15:493, in providing for the laying of a foundation as a predicate for the admission of impeaching evidence, does not envision that every detail of the incident should be directed to the witness, it merely requires that his attention be called to the time, place, and circumstances, so that there may be " * * * no possibility of his mistaking the conflicting statement referred to, and which he is charged with having made. It is not sacramental that the exact time of the alleged statement should be designated, so that it appears that sufficient reference is made to the circumstances that attended the statement, and to the statement itself, its language and substance, as to apprise the witness clearly of what is referred to, and place him fully on his guard." School Board of Union Parish v. Trimble, 33 La.Ann. 1073. See also State v. Hampton, 33 La.Ann. 1252 and State v. Bueche, 243 La. 160, 142 So.2d 381.

We also note that the judge declares in his per curiam that the rejection of appellant's impeaching evidence was not prejudicial in any event since appellant did not state in her testimony that she had engaged in a tussle with her husband at any time before she fired the fatal shots.

We find no substance in this position for the jury was entitled to have before it the impeaching evidence in order for it to weigh the credibility to be given the testimony of Mrs. Vera Caldwell, who gave a version of the shooting different from the one given by appellant. Furthermore, upon laying the proper foundation, appellant had a statutory right to have the jury hear and consider the impeaching evidence. Deprivation of this right is error which requires reversal of the conviction.

For the reasons assigned, the conviction and sentence are annulled and the case is remanded to the district court for a new trial.