# IN THE COURT OF APPEALS OF IOWA

No. 18-0536
Filed December 18, 2019

**STATE OF IOWA,**
         Plaintiff-Appellee,

**vs.**

**CHAD LEROY WILSON,**
         Defendant-Appellant.
_____


         Appeal from the Iowa District Court for Mills County, James S. Heckerman,

Judge.


         Chad Wilson appeals multiple criminal convictions and the sentences

imposed.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH**

**DIRECTIONS.**


         Mark C. Smith, State Appellate Defender (until withdrawal), and Vidhya K.

Reddy, Assistant Appellate Defender, for appellant.

         Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


         Considered by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Chad Wilson appeals his convictions, following a jury trial, of one count of sexual abuse in the third degree, two counts of lascivious acts with a child, and two counts of indecent contact with a child. He also challenges the sentences imposed. He argues (1) the court abused its discretion in denying his motions for a mistrial and new trial upon complaints about the presentation of prior-bad-acts evidence; (2) his trial counsel rendered ineffective assistance in failing to object to a jury instruction; (3) his stipulation to a prior conviction for sentencing-enhancement purposes was not entered knowingly and voluntarily; (4) the provision in the sentencing order requiring him to pay court costs, including attorney fees, fails to conform with the oral pronouncement of sentence or, alternatively, was improperly ordered without a determination of his reasonable ability to pay; and (5) the court's entry of a lifetime sentencing no-contact order was illegal.

I.      **Background**

In July 2016, Wilson was charged with a host of crimes for acts allegedly occurring between January 2015 and June 2016.[1]  In March 2017, Wilson moved in limine for exclusion of evidence concerning, among other things, his prior conviction. At a subsequent pretrial conference, the State agreed to not present said evidence unless the defense opened the door. A trial ultimately commenced

---

[1] The charges included one count of third-degree sexual abuse, three counts of lascivious acts with a child, three counts of indecent contact with a child, and two counts of indecent exposure.

on February 27, 2018.[2]  Prior to trial, Wilson's motion in limine was revisited, and the court sustained Wilson's motion as to his prior conviction subject to Wilson not opening the door.

At trial, the complaining witness testified that, after she made allegations of sexual abuse against Wilson, he stated to her, "[T]hanks, now you've got me going to jail again."  At the next recess, Wilson moved for a mistrial based on the testimony.  The court offered to provide the jury a curative instruction.  Wilson declined, taking the position it would draw more attention to the testimony.  The court overruled the motion.  The second day of trial, the State amended its trial information to charge Wilson with one count of third-degree sexual abuse, two counts of lascivious acts with a child, and two counts of indecent contact with a child.  The jury began its deliberations on February 28 at 1:26 p.m.  The jury deliberated for the remainder of the day and was excused at 5:10 p.m.  Deliberations resumed on March 1 at 8:00 a.m.  The jury ultimately reached a verdict at 11:14 a.m., finding Wilson guilty as charged.  Thereafter, Wilson stipulated he was previously convicted on a charge of sexual abuse in the third degree.

Prior to sentencing, Wilson filed a combined motion for a new trial and in arrest of judgment.  In the motion, defense counsel noted the complaining witness's testimony concerning Wilson going to jail "again," and stated she spoke with the jury foreperson, who "confirmed that the jury heard this statement and

---

[2] The matter proceeded to trial in September 2017, but a mistrial was declared when jurors observed Wilson in custody during a recess.

considered it during their deliberations." The State resisted. The State submitted

an affidavit of the jury foreperson, which provided:

> 1. The discussion I had with defense counsel was misstated in the Motion for a New Trial.
> 2. The jurors heard N.W.'s testimony about the defendant going to "jail again," but the discussion during deliberations about that comment was brief and no weight was placed on that statement in reaching the verdicts.
> 3. I, personally, reminded the rest of the jurors that her comment about him being in jail before doesn't matter to our deliberations and that he could have been in jail for something else. I stated something to the effect of, "We can't even take that into account because we don't know what he might have been in jail for previously." We never brought up the possibility that it could been for a sex abuse charge.

The court heard the motion at the time set for sentencing. Following arguments of

the parties, the court explained:

> [I]t's my custom and practice upon the completion of every jury case to go in and talk to the jury afterwards. And we all know sitting here that the jury went much longer at least than I thought they were going to go and I think counsel probably agrees with that as well.
> . . . [T]here were two holdouts that were—that were not voting guilty—or that were voting not guilty when I discussed this with them. And they at—they asked what—about the procedure and practice and what was going to happen now and I was explaining to them that because of the prior circumstances, his—because of his prior history—now this is after they've already returned a verdict obviously. And the two holdouts said—and I said because of what his criminal history was and they said if we would have known that, we would have found him guilty yesterday. So all I'm trying to say is there's some conflict here with respect to what they knew or what they didn't know
> . . . . The impression I got was that they weren't considering— and some of them even indicated they were not familiar with that statement.
> Regardless of that, . . . you've talked to the foreman of the jury. I've got an affidavit from the foreman of the jury. I talked to the foreman of the jury as well, and all the members of the jury were there, and it wasn't just that that was holding them up. They were held up with respect to Count I being what particular act, on what date and when that occurred. And once they finally got that resolved, as you recall, we had a verdict in a matter of minutes.

The court denied the motion. The court sentenced Wilson to life in prison on counts one through three, *see* Iowa Code §§ 902.1(1), .14(1)(b), (c) (2016), and indeterminate terms of incarceration in the amount of four years on counts four and five, with a mandatory minimum of eighty-five percent. *See id.* §§ 709.12(1), 901A.2(1), 903.1(2). The sentencing order provided "[a]ll court costs, including court-appointed attorney fees, are taxed to Defendant."[3] The court also entered a separate no-contact order prohibiting contact between Wilson and his victim for life. As noted, Wilson appeals.

## II.    Analysis

### A.    Motions for Mistrial and New Trial

Wilson challenges the district court's denial of his motions for mistrial and new trial upon his claim that he was denied a fair trial when the complaining witness testified that, after she made allegations of sexual abuse against Wilson, he stated to her, "[T]hanks, now you've got me going to jail again."

We review the district court's denial of a mistrial motion for an abuse of discretion. *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). This is our most deferential standard of review. *State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017). An abuse of discretion occurs when the court "exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018) (quoting *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016)). Trial courts have broad discretion in ruling on motions for a mistrial. *State*

---

[3] The court entered a subsequent nunc pro tunc order adding additional sentencing provisions. The additional provisions are not germane to the issues raised in this appeal.

*v. Brown*, 397 N.W.2d 689, 699 (Iowa 1986). This is because "they are present throughout the trial and are in a better position than the reviewing court to gauge the effect of the matter in question on the jury." *State v. Jirak*, 491 N.W.2d 794, 796 (Iowa Ct. App. 1992). "A mistrial is appropriate when 'an impartial verdict cannot be reached' or the verdict 'would have to be reversed on appeal due to an obvious procedural error in the trial.'" *State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006) (quoting *State v. Piper*, 663 N.W.2d 894, 902 (Iowa 2003), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545, 550–51 (Iowa 2010)). "Ordinarily, abuse of discretion is found upon the denial of a mistrial only where there is no support in the record for the trial court's determination." *Jirak*, 491 N.W.2d at 796.

An abuse of discretion in denying a mistrial motion occurs "only when defendant shows prejudice which prevents him from having a fair trial." *State v. Callender*, 444 N.W.2d 768, 770 (Iowa Ct. App. 1989). Upon our review, we are unable to say Wilson met his burden to show he was prejudiced by the complained-of testimony. While it is undisputed the jury heard the testimony and discussed it, the foreperson specifically provided "no weight was placed on that statement in reaching the verdicts" and the jury discussed the fact that Wilson being in jail before could not be considered in reaching the verdict.[4] Furthermore, the testimony was

---

[4] We note Iowa Rule of Evidence 5.606(b)(1) provides:
> During an inquiry into the validity of a verdict . . . , a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything upon that juror's or another juror's vote; or any juror's mental processes concerning the verdict . . . . The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

"brief, inadvertent, and did not play a major part in the State's case." *See Plain*, 898 N.W.2d at 815. We are unable to say the testimony prevented Wilson from receiving a fair trial, or that the court's decision to deny Wilson's motion for a mistrial was based on grounds clearly untenable or to an extent clearly unreasonable. *Wickes*, 910 N.W.2d at 564. We are likewise unable to say Wilson was entitled to a new trial on the ground that he was denied a fair and impartial trial. *See* Iowa R. Crim. P. 2.24(2)(b)(9). We affirm the district court's denial of Wilson's motions for mistrial and new trial.

B.      Ineffective Assistance of Counsel—Jury Instruction

The jury was instructed: "Evidence has been offered to show that the defendant made statements at an earlier time and place. If you find any of the statements were made, then you may consider them as part of the evidence, just as if they had been made at this trial." On appeal, Wilson contends his counsel rendered ineffective assistance in failing to object to said instruction as an incorrect statement of the law. We review ineffective-assistance-of-counsel claims de novo. *State v. Baltazar*, ___ N.W.2d ___, ___, 2019 WL 6222088, at *4 (Iowa 2019). Wilson must show by a preponderance of evidence that (1) counsel failed to perform and essential duty and (2) prejudice resulted. *Id.* Wilson argues:

> While the rules of evidence provide that statements of party opponents are admissible, the rule of evidence and the rationale underlying the hearsay exception provides no authority to require the jury to consider the statements as bearing the same weight as testimony received at trial, made under oath and under penalty of perjury.

---

Neither party raised an objection to the district court's consideration of the juror affidavit, nor do they complain about it on appeal. Any challenge was thus not preserved below and is waived on appeal. We will decide the issue as presented to us.

We have previously rejected the exact same word-for-word argument, finding the challenged instruction a correct statement of the law. *See State v. Yenger*, No. 17-0592, 2018 WL 3060251, at *4–5 (Iowa Ct. App. June 20, 2018), *further review denied* (Sept. 13, 2018); *see also State v. Payne*, No. 16-1672, 2018 WL1182624, at *8–10 (Iowa Ct. App. Mar. 7, 2018), *further review denied* (July 23, 2018). We see no reason to deviate from those prior holdings. We conclude counsel was not ineffective as alleged.

> C.      Sentencing Enhancement

Wilson argues the colloquy for his stipulation to a prior third-degree sexual abuse conviction was deficient and the stipulation was therefore not knowing and voluntary. The parties contest whether error was preserved. The State argues, because Wilson did not raise this issue in his motion in arrest of judgment, he has failed to preserve error. *See* Iowa R. Crim. P. 2.8(2)(d). Wilson argues, because he was not advised of his obligation to file a motion in arrest of judgment to challenge his stipulation, his failure to do so does not preclude appellate review. *See State v. Fisher*, 877 N.W.2d 676, 680 (Iowa 2016). We find Wilson's argument more persuasive, and adhere to our position that a failure to file a motion in arrest of judgment does not prevent appellate review of a prior-conviction-stipulation colloquy when the defendant is not advised of the obligation. *See State v. Johnson*, No. 17-1871, 2018 WL 6120245, at *2 (Iowa Ct. App. Nov. 21, 2018); *see also State v. Smith*, 924 N.W.2d 846, 850 (Iowa 2019) ("Smith contends the requirement in rule 2.8(2)(d) and the error preservation exception . . . should apply to habitual offender proceedings. We agree." (citation omitted)); *State v.*

*Harrington*, 893 N.W.2d 36, 42 (Iowa 2017) ("[A]n admission by an offender to the prior convictions to support sentencing as a habitual offender is comparable to a plea of guilty to support sentencing for the crime identified in the plea.").

We proceed to the merits. The State, only attacking Wilson's claim under an ineffective-assistance-of-counsel rubric, appears to concede the colloquy for Wilson's stipulation to a prior conviction wholly failed to comply with our supreme court's directive in *Harrington*, 893 N.W.2d at 45–46. We agree. Given the limited colloquy conducted by the district court to determine whether Wilson was aware of the consequences of his stipulation, we conclude he did not knowingly and voluntarily admit his prior conviction. Consequently, we reverse the court's findings Wilson was previously convicted of offenses that would result in enhancements under sections 901A.2(1) and 902.14 and remand for further proceedings under Iowa Rule of Criminal Procedure 2.19(9). Having reversed the prior-conviction findings, we likewise vacate the sentences imposed and the court's written sentencing order. *See* Iowa R. Crim. P. 2.19(9) ("After conviction of the primary or current offense, *but prior to the pronouncement of sentence . . . .*" (emphasis added)).[5]

D.     Restitution and No-Contact Order

Having vacated the sentences imposed and the court's written sentencing order, we find it unnecessary to address Wilson's restitution challenge. On remand, the district court should be directed by the supreme court's recent clarifications concerning restitution-related orders.

---

[5] *See also* Iowa R. of Crim. P. 2.23(1), (3) (stating time for entry of judgment of conviction and imposition of sentence).

Because we have vacated the sentences and the sentencing order, the no-contact order included in the sentencing order is likewise vacated. For protection of the victim, we direct the previously issued temporary no-contact order be reinstated. After further proceedings on remand and upon resentencing, the court may enter a no-contact order. *See* Iowa Code § 664A.5. Because the issue is likely to present itself on remand, we will address Wilson's argument the court's entry of a lifetime no-contact order was illegal. The State concedes error. Because we agree, at the time of judgment and resentencing the district court may enter a no-contact order. *See id.*

## III.   Conclusion

We affirm Wilson's guilty verdicts but reverse the district court's findings in support of the enhancements under sections 901A.2(1) and 902.14 and remand for further proceedings under Iowa Rule of Criminal Procedure 2.19(9). Having reversed the prior-conviction findings, we likewise vacate the sentences imposed and the court's written sentencing order. Having vacated the sentences imposed and the court's written sentencing order, we find it unnecessary to address Wilson's restitution challenge. Because we have vacated the sentences and the sentencing order, the no-contact order included in the sentencing order is likewise vacated. For protection of the victim, we direct the previously issued temporary no-contact order be reinstated. After further proceedings on remand and upon resentencing, the court may enter a no-contact order.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

May, J., concurs; Tabor, P.J., concurs specially.

**TABOR, Presiding Judge** (concurring specially).

I agree with the majority's decision on all points except one. I would preserve the claim of ineffective assistance of counsel for failing to object to the jury instruction equating out-of-court admissions by a party opponent with in-court testimony. As I discussed in two previous dissents, I believe this instruction is flawed and misleads the jurors into believing they can give Wilson's extrajudicial admissions the same force and effect as sworn testimony. *See State v. Yenger*, No. 17-0592, 2018 WL 3060251, at *6 (Iowa Ct. App. June 20, 2018) (Tabor, J., dissenting); *State v. Payne*, No. 16-1672, 2018 WL 1182624, at *11–12 (Iowa Ct. App. Mar. 7, 2018) (Tabor, J., dissenting). If, as the State asserts, "misreading this instruction would only work to Wilson's benefit," then defense counsel can make that case in their testimony at a postconviction-relief hearing.